# FOR PUBLICATION

FILED & ENTERED

JUL 08 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No.: 1:13-bk-13562-MB |
| STANLEY MENAKER and MARINA MENAKER, | Chapter 13 |
| Debtors. | Adv. Proc. No.  1:17-ap-01047-MB |
| WEST VALLEY MEDICAL PARTNERS, LLC, | **MEMORANDUM OF DECISION AFTER TRIAL** |
| Plaintiff, | |
| vs. | |
| STANLEY MENAKER and MARINA MENAKER, | |
| Defendants. | |

MEMORANDUM OF DECISION AFTER TRIAL

The principal question presented by this adversary proceeding is whether a chapter 13 debtor's failure to list and schedule a debt in time for the creditor to timely file a proof of claim renders the debt nondischargeable under Bankruptcy Code section 523(a)(3)(A), irrespective of the reason for that failure, the election of the creditor not to seek leave to file an untimely proof of claim, or other equitable considerations. Where the creditor does not otherwise have notice or actual knowledge of the chapter 13 case before the claims bar date, the Court answers this question in the affirmative.

In so doing, the Court limits its reading of section 523(a)(3)(A) to the plain language of the statute, relying on the reasoning of *Mahakian v. William Maxwell Invs., LLC (In re Mahakian),* 529 B.R. 268 (B.A.P. 9th Cir. 2015), a chapter 7 case in which the estate held assets and a bar date was established, and the scholarly concurrence of Judge O'Scannlain in *Beezley v. Cal. Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1433 (9th Cir. 1993) (O'Scannlain, J., concurring). Conversely, the Court rejects as inapplicable those Ninth Circuit bankruptcy cases that apply an equitable test to the construction of section 523(a)(3)(A).

The Court also considers the whether this adversary proceeding is barred by the doctrine of laches, but ultimately concludes that the debtors have not met their burden to demonstrate that the requirements of that doctrine are satisfied.

The Court conducted a trial in this adversary proceeding on October 15, 2018. Plaintiff West Valley Medical Partners, LLC ("West Valley" or "Plaintiff") was represented by Ian Landsberg of Landsberg Law, APC. Defendants Stanley Menaker and Marina Menaker (the "Defendants" or the "Debtors") were represented by Michael Jay Berger of the Law Offices of Michael Jay Berger. The Court has received post-trial briefing from the parties, heard and considered the oral arguments of counsel, and reviewed the trial record. The matter is now ripe for decision. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

# I.

# JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (I), and this Court has the constitutional authority to enter a final judgment. *Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932 (2015).

# II.

# FACTUAL BACKGROUND

In October 2009, the Plaintiff leased commercial office space located at 5363 Balboa Blvd., Ste. 121, Encino, California to the Defendants, who used the premises to operate a medical sleep study clinic. The lease was for a seven-year term commencing on October 22, 2009, expiring on September 30, 2016. By April of 2013, the Defendants had vacated the premises.

On May 24, 2013, the Defendants filed a joint voluntary chapter 13 petition. On June 7, 2013, the Defendants filed their schedules of assets and liabilities and statement of financial affairs. The Defendants did not schedule the Plaintiff as the holder of a claim. The Defendants likewise did not list Plaintiff on their master mailing list of creditors. Plaintiff did not receive written notice of the commencement of the case, the 341(a) meeting of creditors, or the bar date established in the case for filing proofs of claim. The bar date (except as to governmental units) was October 8, 2013.

On December 16, 2013, the Defendants' chapter 13 plan was confirmed. Thereafter, the chapter 13 trustee filed her *Notice of Intent to Pay Claims* (the "Notice,"). Case Dkt. 35. Because the Defendants did not schedule the Plaintiff as the holder of a claim, the Plaintiff was not listed on the Notice.

On December 3, 2014, unaware of the filing of the bankruptcy case, Plaintiff filed a complaint for breach of the lease against the Defendants in the Los Angeles Superior Court. Defendants did not respond to the state court action.

On January 26, 2015, the Defendants filed an amended schedule F in this case to include the Plaintiff as an unsecured creditor in the amount of $47,000. The amended schedule lists Dan Persoff, the Plaintiff's state court counsel, as the contact, as well as his law firm's address.[1]

On April 15, 2015, the Defendants' bankruptcy counsel, Elena Steers, served on Persoff a *Notice of Stay of Proceedings* (the "Notice of Stay") in the state court action. Thereafter, Persoff also filed a Notice of Stay in the state court action.

On January 17, 2017, the Defendants obtained their discharge in the bankruptcy case. On January 25, 2017, the bankruptcy case was closed. On March 27, 2017, the Plaintiff filed a motion to reopen the case for the purpose of determining the nondischargeability of a debt under Bankruptcy Code section 523(a)(3). On April 6, 2017, the Court entered an order reopening the case.

On May 5, 2017, the Plaintiff filed its *Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(3)* (the "Complaint,"). Adv. Dkt. 1. The matter was assigned to mediation but did not settle. The parties thereafter entered a pre-trial stipulation (the "Joint Pre-Trial Stipulation"). Adv. Dkt. 22. Paragraph III of the Joint Pre-Trial Stipulation notes that just one issue of law remains to be litigated:

> i. "Should the obligation to Plaintiff be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(3)?"

On June 8, 2018, the Court entered its *Order Approving Joint Pre-Trial Stipulation*. Adv. Dkt. 26.

On October 1, 2018, the parties stipulated to the joint use of Defendants' exhibit register at trial. Adv. Dkt. 37. On October 12, 2018—just one Court day before trial—the Plaintiff then filed an *Emergency Motion to Amend Joint Exhibit Register to Replace Exhibit B* (the "Emergency Motion"). Adv. Dkt.42. By way of the Emergency Motion, the Plaintiff sought to replace the tenant ledger identified as Exhibit B in the Joint Exhibit Register with an updated version that previously had not been shared with the Defendants. The Court denied the Emergency Motion.

---

[1] The listed address does not include the suite number for the law firm.

2

At trial, the Court received live testimony from (1) Gary Grabel, the principal of the Plaintiff, (2) Dan Persoff, former counsel to the Plaintiff, (3) Ian Landsberg, current counsel to the Plaintiff, (4) Elena Steers, bankruptcy counsel to the Defendants, (5) Defendant Marina Menaker, and (6) Defendant Stanley Menaker.  At the end of the trial, the Court continued the proceeding for legal argument and invited post-trial briefing.  Following a stipulated continuance and the filing of post-trial briefs, the Court heard closing arguments on January 10, 2019.

### IV.  LEGAL ANALYSIS

The Complaint alleges one cause of action under section 523(a)(3)(A).  The creditor-plaintiff bears the burden of proof by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 287 (1991).  Subject to certain other exceptions not applicable here, a chapter 13 debtor is entitled to a discharge of "all debts provided for by the plan or disallowed under section 502 of this title" except any debt of the kind specified in Bankruptcy Code section 523(a)(3).  *See* 11 U.S.C. § 1328(a).  In section 523(a)(3) provides:

> (a) A discharge under . . . this title does not discharge an individual debtor from any debt—
> …
> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.

11 U.S.C. § 523(a)(3)(A).

Plaintiff contends that it has met its burden of proof under the plain language of the statute by showing that its debt was not listed or scheduled by the Defendants prior to the deadline for filing claims in this case, and that Plaintiff did not have notice or actual knowledge in time to file a timely proof of claim.  The Defendants do not deny that they failed to timely schedule the Plaintiff's debt, but argue that the debt nevertheless should be subject to the discharge in this case.  First, as a matter of equity, they contend that the omission was justified and should not result in the exclusion of the Plaintiff's claim from the discharge.  Second, even though the Plaintiff did not receive a case commencement notice or claims bar date notice, the Defendants contend that

Plaintiff effectively had knowledge of the case prior to the claims bar date. Additionally, the Defendants assert the equitable defense of laches, arguing that the Plaintiff's delay in bringing this suit was prejudicial and should preclude a determination that the debt is nondischargeable. The Court explains below why each of the Defendants' arguments fails.

### A. The Application of Section 523(a)(3)(A)

#### 1. The Plain Language Approach

The Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") has held that the language of section 523(a)(3)(A) should be construed in accordance with its plain language—which does not provide for any equitable exception. "The language contained in section 523(a)(3)(A) is clear and not ambiguous: a debt is excepted from discharge if the creditor was neither listed nor scheduled and did not otherwise know of the bankruptcy case in time to file a timely [proof of claim]. As there is nothing for us to interpret, we must enforce the statute according to its terms." *In re Mahakian,* 529 B.R. at 274 (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989)); *see also Purcell v. Khan (In re Purcell)*, 362 B.R. 465 (Bankr. E.D. Cal. 2007) (there are no equitable exceptions to section 523(a)(3)(A); the plain language of the statute controls) (citing *Laczko v. Gentran, Inc. (In re Laczko)*, 37 B.R. 676, 678-79 (9th Cir. B.A.P. 1984), *aff'd without opinion*, 772 F.2d 912 (9th Cir. 1985)).

The decision in *In re Mahakian* is instructive. Although it first appeared to be a no-asset chapter 7 case, the trustee later identified assets to administer for the benefit of creditors and the court fixed a bar date for filing claims. *See* 529 B.R. at 271. The holder of one of the debtor's obligations did not receive notice of the filing of the case or of the bar date because the debtor failed to schedule the debt on his bankruptcy schedules or include the name and address of the creditor in his master mailing list. *Id.*

Four months after the bar date expired, the debtor in *In re Mahakian* amended his schedules to include the omitted debt and provided notice of the amendment to the affected creditor. *Id.* Several months later, the debtor also filed a proof of claim on behalf of the omitted creditor pursuant to Federal Rule of Bankruptcy Procedure 3004, prior to the making of distributions in the

4

case but months after the deadline for doing filing such a claim.[2] The debtor requested that its claim on behalf of the creditor be treated as timely, based on the excusable neglect standard articulated in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd P'ship*, 507 U.S. 380 (1993).[3]

      The BAP rejected the debtor's position, holding that even if the claim filed by the debtor was deemed timely, the court could not ignore the language in section 523(a)(3)(A) rendering the debt nondischargeable for failure to schedule it and provide notice to the debt holder. *In re Mahakian*, 529 B.R. at 276. The BAP found that its strict construction of section 523(a)(3)(A) was supported by the reasoning of Judge O'Scannlain's concurrence in *In re Beezley*, 994 F.2d 1433, which reasoning was later adopted (at least in part) by the Ninth Circuit Court of Appeals in *White v. Nielsen (In re Nielsen)*, 383 F.3d 922, 926 (9th Cir. 2004).

      The two-paragraph per curiam opinion in *Beezley* held that it is futile for a debtor to amend his/her schedules in a no-asset, no-bar date chapter 7 case to add a debt covered by section 523(a)(3)(A) because, under those circumstances, all such debts are discharged under Bankruptcy Code section 727. *In re Beezley*, 994 F.3d at 1433. Judge O'Scannlain's concurring opinion elaborated on why this was the proper result under the Bankruptcy Code*, see In re Beezley*, 994 F.3d at 1436-37,[4] but also why the lower courts had improperly applied a multi-factor equitable test to determine whether the claim had been discharged. *Id.* at 1437-41 (criticizing lower courts'

---

[2] Federal Rule of Bankruptcy Procedure 3004 permits a debtor to file a proof of claim on behalf of a creditor who fails to do so timely, provided the debtor does so within 30 days of the bar date by which the creditor was required to file that claim. *See* Fed. R. Bankr. P. 3004.

[3] *Pioneer* establishes a four-factor equitable test for determining whether a party's neglect of a bar date is excusable: "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was in the reasonable control of the movant, and whether the movant acted in good faith." 507 U.S. at 395.

[4] As Judge O'Scannlain explained, no bar date for filing proofs of claim is set in a no-asset chapter 7 case because there are no assets to distribute. Because there is no bar date, no claim filed in such a case can ever be untimely. Bankruptcy Code section 523(a)(3) is not implicated in that scenario because no creditor will be deprived of the right that the statute protects. *See Beezley*, 994 F.2d at 1436-37 (O'Scannlain, J., concurring).

(Continued...)

5

reliance on the equitable approach adopted in *In re Stark*, 717 F.2d 322 (7th Cir. 1983) (per curiam)). It is the latter point that was particularly relevant in *In re Mahakian* and that is particularly relevant to the dispute presented here.[5]

In examining the legislative history of section 523(a)(3), Judge O'Scannlain observed that "Congress has expressly disapproved the importation of equitable notions of a debtor's good faith or a creditor's fair opportunity to participate in the bankruptcy process into the interpretation and analysis of section 523(a)(3)." *Id.* at 1439 n.4. He emphasized that "nowhere in section 523(a)(3) is the *reason* why a debt was omitted from the bankruptcy schedules made relevant to the discharge of that debt. Courts are not free to condition the relief Congress has made available in the Bankruptcy Code on factors Congress has deliberately excluded from consideration." *Id.* at 1439 (original emphasis) (footnotes omitted).

He warned, moreover, that the importation of equitable principles into section 523(a)(3) would upset the delicate balance struck by Congress between the rights of debtors and creditors:

> Our task is, perhaps, a relatively easier one, for we have only to apply the law as Congress has written it. What Congress deemed a proper balancing of the equities as between debtor and creditor with respect to unlisted debts it has enacted in section 523(a)(3) of the Bankruptcy Code. It is not for the courts to restrike that balance according to their own lights.

*Id.* at 1440; *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code").

---

[5] The BAP in *In re Mahakian* stated that Judge O'Scannlain's concurring opinion in *In re Beezley* was "adopted" by the Ninth Circuit in *In re Nielsen*. *See In re Mahakian*, 529 B.R. at 276. While that statement is correct, the Court has been cautious here not to assume that *In re Nielsen*, by itself, controls the question presented here. *In re Nielsen* was a no-asset, no-bar date chapter 7 case. The court of appeals there relied extensively on Judge O'Scannlain's concurrence in *In re Beezley* for its explanation of why section 523(a)(3) is not implicated in that kind of case. *See* 383 F.3d at 926. The decision in *In re Nielsen*, however, does not discuss the strict construction of section 523(a)(3) for which Judge O'Scannlain advocated in other kinds of cases, *e.g.*, cases with assets and a bar date.

The import of these authorities is that when applying Bankruptcy Code section 523(a)(3), the reason why a debt was omitted from a debtor's schedules is not relevant to whether the debt is dischargeable. The appropriate inquiry is whether the debtor listed the debt and provided notice in time for the creditor to timely file a proof of claim or whether the creditor otherwise had notice or actual knowledge of the bankruptcy case in time for such a filing. Equitable considerations have no place in the analysis. Here, the Defendants admit that Plaintiff's claim was not listed or scheduled, and that Defendants did not attempt to give written notice of the bankruptcy case, until well after the claims bar date had passed. As discussed below, moreover, the Court is not persuaded that Plaintiff had notice of the case in time to file a timely proof of claim. As such, the Plaintiff's debt is nondischargeable under section 523(a)(3).[6]

### 2. The Defendants' Alternative Approach

Rather than adhere to the plain language of the statute, the Defendants urge the Court to apply the multi-factor equitable test adopted by the Fifth Circuit Court of Appeals to determine if a claim is non-dischargeable under section 523(a)(3). *See Stone v. Caplan (In re Stone),* 10 F.3d 285 (5th Cir. 1994) ["*Stone*"] and *Robinson v. Mann,* 339 F.2d 547 (5th Cir. 1964).[7] Relying on this line of authority, the Defendants argue that they omitted Plaintiff's debt from their schedules in "good faith" and without the intent of harming Plaintiff. Specifically, the Defendants contend that they did not list the debt because the Plaintiff's representative, Grabel, had advised Marina Menaker previously that the Plaintiff did not intend to pursue the Defendants for damages under the breached lease.

---

[6] The Court does not find it necessary to determine whether service on Persoff of the Defendants' amended schedule F on January 26, 2015 was legally ineffective, and whether notice of the case was not effectively given until the Notice of Stay was served on Persoff on April 15, 2015. In either instance, service was approximately two years after the bar date had expired and the chapter 13 plan had been confirmed.

[7] That approach requires consideration of three factors to determine whether a debtor's failure to list a creditor will prevent discharge of the unscheduled debt: "(1) the reasons the debtor failed to list the creditor, (2) the amount of disruption which would likely occur, and (3) any prejudice suffered by the listed creditors and the unlisted creditor in question." *Stone,* 10 F.3d at 290.

The Defendants also argue that the Plaintiff—upon learning of the bankruptcy—should have requested leave to file a late claim, thereby minimizing the impact of that claim on the Defendants' chapter 13 case. The Defendants contend that if the Plaintiff had done so, the Defendants might have been able to address the debt under their chapter 13 plan, e.g., by extending the plan from a three-year plan to a five-year plan and making partial payments on the claim. They argue that it would be inequitable under these circumstances to "reward" the Plaintiff with a nondischargeable debt.

The Court does not find these arguments persuasive. As a threshold matter, the Court declines to follow the Fifth Circuit approach articulated in *Stone* and *Robinson*. Although the Defendants cite to several California bankruptcy decisions that have followed the Fifth Circuit approach, these cases appear to be no-asset, no-bar date chapter 7 cases and all precede the decisions in *In re Beezley* and *In re Mahakian*. *See In re Bowen*, 102 B.R. 752 (9th Cir. B.A.P. 1989); *In re Kuhr,* 132 B.R. 421 (Bankr. E.D. Cal. 1991); *In re Brosman*, 119 B.R. 212 (Bankr. D. Alaska 1990). Moreover, it appears that these courts followed the Fifth Circuit approach to address the perceived unfairness of strictly applying section 523 in a no-asset, no-bar date chapter 7 case. As the subsequent Ninth Circuit per curiam decision and Judge O'Scannlain's concurrence in *Beezley* demonstrate, section 523(a)(3) simply does not apply by its terms in those circumstances.[8]

The case presently before the Court is a chapter 13 case in which a bar date was set, a plan confirmed and monthly payments made to creditors. There are no exceptions to the plain language of the statute. This is consistent with the position advocated by Judge O'Scannlain in his *Beezley* concurrence, and applied by Ninth Circuit courts in cases involving the existence of estate assets and the fixing of a bar date. *See In re Mahakian,* 529 B.R. at 274; *In re Purcell*, 362 B.R. at 472-73. As the court in *In re Purcell* observed, "no court that has followed *Robinson v. Mann* has

---

[8] *See supra* note 4.

8

extended its reasons to cases in which a bar date was set *and* there were assets to be distributed to creditors." 362 B.R. at 472 (original emphasis).

### 3. The Defendants' Equitable Arguments

Even if the Defendants' equitable arguments under section 523(a)(3) were legally relevant to the analysis, the Court does not find them persuasive. The Defendants' first equitable argument is that they did not schedule the Plaintiff's debt because Grabel told Maria Menaker, during an in-person conversation in December 2012, that he did not intend to pursue a claim against the Defendants for breach of the lease. Maria Menaker testified that she "sincerely believed" Grabel had made such a commitment, but her direct testimony describing what Grabel actually said does not provide objective evidence of such a commitment. Maria testified that after telling Grabel she intended to discontinue the business, move out of the premises and file bankruptcy, Grabel stated:

> Yeah. What am I going to do with this bankruptcy? I'm not going to get anything from you. You don't have anything for me to get. What, am I going to get this picture of the bankruptcy, just put it on my wall? No. I have someone that is interested in the facility. I have the Children's Hospital. They want to come in.

Trial Record at 2:58 p.m. Her counsel thereafter asked her directly "Do you remember specifically that he said he was not going to pursue this debt from you?" *Id.* But she did not answer directly, instead saying "He. . . I sincerely believed him because up to that point he never lied to me. And, ah, everything he said he followed up." She later testified that she told her husband and her bankruptcy lawyer that she believed "Gary was not going to go after us" but did not testify to any statements by Grabel evidencing an express modification or novation of the parties' obligations under the lease.

More importantly, whatever Grabel's statement, and whatever Maria's understanding of it, the Defendants' alleged reliance on it was not justified. First, the lease itself provides that the terms and conditions thereunder cannot be modified other than in a writing signed by all parties. *See* Exhibit A at ¶ 35.13 ("This Lease . . . may not be modified except by a written document executed by the parties hereto."). Maria testified that there was no writing evidencing Grabel's alleged commitment not to pursue Plaintiff's rights under the lease. Second, the Bankruptcy Code is set up to provide debtors certainty about debts that may or may not have been satisfied or extinguished

9

prepetition. The Bankruptcy Code enables a debtor to schedule a debt on his/her schedules and obtain a discharge—in this instance upon completion of all payments due under a chapter 13 plan. *See* 11 U.S.C. § 1328. Even if the Defendants had obtained a writing purporting to extinguish their obligations under the lease, the Court can imagine no good reason why the Defendants would not have timely listed the Plaintiff as a creditor and scheduled the debt—in a zero amount and/or as a "disputed" claim—to enjoy the certainty and peace of mind that results from the discharge.

The Defendants' second equitable argument is that Defendants should have requested leave to file a late claim, upon learning of the chapter 13 case. The Defendants contend that if the Plaintiff had sought leave to file a late claim, the Defendants may have been able to amend their plan to treat that claim over the term of the plan. If accepted, however, this argument would turn the Bankruptcy Code on its head. The very structure of section 523(a)(3)(A)—that a discharge is denied if a debt is not timely listed in the schedules by the debtor—is an indication of Congress' intent to place the burden squarely on the debtor to take the action necessary to earn a discharge. There is no indication in the text of the statute that the burden shifts to the creditor to act if it receives *untimely* notice of the case.

Moreover, untimely notice of the opportunity to file a proof of claim in a chapter 13 case and possibly participate in distributions under a chapter 13 plan does not necessarily "restore" the rights to which a creditor is entitled. Untimely notice may come only after distributions have begun under a chapter 13 plan and the only available distributions will result in less than the creditors' pro rata entitlement. Untimely notice of the case also may deprive the creditor of other important rights in the life of a chapter 13 case, such as the right to conduct discovery and object to confirmation of the chapter 13 plan, the right object to other claims and thereby increase the creditor's share of the estate, and the right to challenge any proposed disposition of assets prior to confirmation of the plan.

Thus, it would be fundamentally unfair to require a creditor to file a claim in a chapter 13 case after the bar date has elapsed. *See In re Fugate,* 286 B.R. 778 (Bankr. N.D. Cal. 2002) (chapter 13) ("There is no way, after the claims bar date has passed, to extend the date and force the creditor to participate in a plan to which it never had the chance to object. The court agrees that this

result is justified 'as a punishment for a fundamental bankruptcy sin, failing to list all creditors which are known or should have been known to the debtor.'") (citing *In re Kristiniak*, 208 B.R. 132, 136 (Bankr. E.D. Pa. 1997)); *see also In re Purcell,* 362 B.R. at 476 (describing the important rights of participation denied to a creditor in an asset chapter 7 case when the creditor does not receive timely notice of the case). For these reasons, even though Plaintiff could have sought permission to file a late claim after learning of the chapter 13 case, it was not obligated to do so.

### B. Actual Knowledge of the Bankruptcy Case

The nondischargeability of a debt under Bankruptcy Code section 523(a)(3)(A) requires not only that the debtor fail to schedule the debt in time for the creditor to timely file a claim, but also that the creditor not have "had notice or actual knowledge of the case in time" to file such a claim. While it is undisputed by the Defendants that the Plaintiff did not receive timely written notice of the bankruptcy case or the claims bar date, the Defendants argue that Maria Menaker's statements to Grabel in December 2012 nevertheless were adequate to give the Plaintiff notice for purposes of section 523(a)(3)(A). The Court disagrees. An open-ended statement by a debtor regarding his/her intent to file bankruptcy in the future is not a substitute for notice that the debtor *actually* has filed a bankruptcy case, the date of such filing, the court in which such case has been filed, and the bar date set in that case for filing proofs of claim. Maria Menaker's statement in December 2012 of her intent to someday file bankruptcy does not constitute notice of the actual filing of a bankruptcy case that did not occur for another five months. To construe the actual notice exception of section 523(a)(3)(A) in this manner defies logic, and would undermine the burden Congress clearly placed on debtors to timely list and schedule all creditors against whom bankruptcy relief is sought.

### C. Laches as a Defense

The Defendants invoke the equitable doctrine of laches to contend that Plaintiff should be denied relief because it waited an unreasonable amount of time to commence this proceeding under Bankruptcy Code section 523(a)(3)(A). The Defendants contend that Plaintiff learned of the Defendants' bankruptcy case in either January 2015 or April 2015, but did not commence this adversary proceeding for nearly two years, after the bankruptcy case was closed. The Defendants rely on *Beaty v. Selinger (In re Beaty),* 306 F. 3d 914 (9th Cir. 2002), in which the Ninth Circuit

Court of Appeals held that a party could assert laches as a defense to action brought under Bankruptcy Code section 523(a)(3)(B).

Even if the Court assumes for the sake of argument that the holding in *In re Beaty* is equally applicable to actions under both sections 523(a)(3)(A) and 523(a)(3)(B), the Defendants have failed to show by a preponderance of the evidence that the requirements of this defense have been satisfied. As a general matter, "the affirmative defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Id.* at 926.[9] In *In re Beaty*, the court of appeals specifically held that "a party asserting laches as a defense to a complaint filed under § 523(a)(3)(B) must make a heightened showing of extraordinary circumstances and set forth a compelling reason why the action should be barred." *Id.* at 925.

The Court concludes that the Defendants have not met their burden to demonstrate a lack of diligence by Plaintiff and prejudice to the Defendants resulting from that lack of diligence. Mere delay alone does not establish a lack of diligence for a laches defense. *Id.* at 927; *see also Am. Int'l Group, Inc. v. Am. Int'l Bank,* 926 F.2d 829, 833 (9th Cir.1991). Given the totality of the circumstances presented, the Court does not conclude that the delay here constitutes a lack of diligence. The Defendants did not give the Plaintiff notice of their chapter 13 case until nearly two years after their chapter 13 plan had been confirmed and the bar date had long since expired. Plaintiff had filed a state court action based on the breached lease more than one year before its discovery of the bankruptcy, which state court action was thereafter stayed. At trial, Grabel testified credibly that before launching this adversary proceeding he wanted to have greater clarity on the extent of Plaintiff's damages under the lease, considering Plaintiff's efforts at mitigation and

---

[9] *See also Kansas v. Colorado,* 514 U.S. 673, 687(1995) (quoting *Costello v. United States,* 365 U.S. 265, 282 (1961) and citing Black's Law Dictionary 875 (6th ed. 1990) ("'Doctrine of laches' is based upon maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to the adverse party, operates as a bar in court of equity.")); *United States v. Marolf,* 173 F.3d 1213, 1218 (9th Cir.1999).

Case 1:17-ap-01047-MB    Doc 64    Filed 07/08/19    Entered 07/08/19 08:15:42    Desc
Main Document    Page 15 of 17

the results thereof.  Although Plaintiff *could* have filed this adversary earlier, the Court is not persuaded that its election not to do so constitutes a lack of diligence.

In *In re Beaty,* the Ninth Circuit held that a section 523(a)(3) action should not be barred without a "particularized showing of demonstrable prejudicial delay." *Id.* at 926.  The defendant there asserted he had been "deprived of the finality of his discharge," that he faced "attorneys' fees that he otherwise might not have faced," and that "there might be some (unspecified) witnesses and/or documentary evidence that will be unavailable because of the passage of time." *Id.* at 928. The court of appeals concluded that "such generic claims of prejudice do not suffice for a laches defense in any case, and are particularly insufficient in a case in which a heightened showing of extraordinary circumstances and demonstrable prejudice is required." *Id; see, e.g., United States v. Admin. Enter., Inc.,* 46 F.3d 670, 673 (7th Cir.1995) (finding no prejudicial delay where alleged harm was "entirely hypothetical"); *Meyers v. Asics Corp.,* 974 F.2d 1304, 1308 (Fed.Cir.1992) ("Defendants also argue that they suffered evidentiary prejudice—loss of key witnesses and loss of documentary evidence. However, none of the defendants state exactly what particular prejudice it suffered from the absence of these witnesses or evidence. Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient.")

The Defendants make similar arguments here.  The Defendants contend that they have been substantially prejudiced because: (1) they have been deprived the finality of their discharge; (2) they are facing a potential non-dischargeable judgment that may exceed $371,000, (3) they believe that if Plaintiff had filed a late proof of claim during that period, Plaintiff would have received a distribution of approximately $12,000, (4) they are incurring attorney's fees that they otherwise would not have faced; and (5) there is unspecified documentary evidence and witness testimony that is unavailable because of the passage of time.  As in *In re Beaty*, these arguments are without merit.

The Plaintiff's delay in bringing this adversary proceeding did not deprive the Defendants' of the finality of their discharge.  As to Plaintiff's debt, it is Defendants' failure to timely schedule the debt that has deprived them of finality—and ultimately the discharge itself.  As to all other

claims, this adversary action has had no effect whatsoever on the Defendants' discharge.  Likewise, the potentially large amount of the non-dischargeable judgment the Defendants are facing is not the result of Plaintiff's delay in bringing this action but is a result of the Defendants' prepetition breach.  Further, the Defendants' contention that Plaintiff could have received a distribution (and the Defendants could have received a discharge) if Plaintiff had sought leave to file a late claim is likewise irrelevant.  As discussed above, Plaintiff was not obligated to do so and its election not to do so is not a form of prejudice to the Debtors.  Even if that were not the case, logically speaking, any such prejudice would not be the result of Plaintiff's delay in filing this lawsuit, but instead of its election not to seek to file a late claim.  Similarly, the Defendants have failed to (i) demonstrate that the attorneys' fees incurred defending this adversary proceeding could have been avoided if the proceeding had been commenced earlier or (ii) identify any documentary evidence or witness testimony that would have assisted in the Defendants' defense of this action but that is no longer available.

In short, the Defendants have failed to meet their burden of proof to demonstrate that the claim asserted in this adversary proceeding is barred by the doctrine of laches.

## V. CONCLUSION

For all the foregoing reasons, the Court finds the Plaintiff has established, by a preponderance of the evidence, that it holds a nondischargeable debt under 11 U.S.C. § 523(a)(3)(A).  Because the Joint Pretrial Stipulation did not identify the amount of the Plaintiff's claim under the lease as an issue to be determined at trial, the Court does not make that

///
///
///
///
///
///
///

determination. That issue properly may be determined by the state court. Accordingly, the Court will enter a separate judgment in favor of the Plaintiff determining that the Defendants' debt under the lease—whatever the amount—is nondischargeable in this case under Bankruptcy Code section 523(a)(3)(A).

###

Date: July 8, 2019

Martin R Barash
United States Bankruptcy Judge